IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER HAMRICK,

          Plaintiff,

v.                                                                    CIVIL ACTION NO.   2:24-cv-00728

WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION
and LT. TIMOTHY TIBBS,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 3), the *Memorandum of Law in Support of Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 4), the *Plaintiff's Memorandum Response to Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 6), and the Defendant's *Reply to Plaintiff's Memorandum Response to Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 8), as well as the *Complaint* (Document 1-2).   For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, Christopher Hamrick, initiated this action with a complaint filed against Defendants West Virginia Division of Corrections and Rehabilitation (WVDCR) and Lt. Timothy Tibbs on or about October 24, 2024.   Mr. Hamrick was incarcerated at the North Central Regional

Jail (NCRJ) during the events at issue. WVDCR is responsible for overseeing jails in West Virginia. Lt. Tibbs was employed as a correctional officer at NCRJ.

On November 19, 2022, Mr. Hamrick was instructed by an officer to stand near a locked gate. While waiting near the gate, he leaned against a nearby wall. Lt. Tibbs then approached Mr. Hamrick and discharged his taser into his chest from a short distance. Mr. Hamrick was not warned that he was going to be tased, nor was he refusing to comply with any orders when he was tased. He was not a threat to himself, Lt. Tibbs, or any other nearby individuals. As a result of the use of force, he suffered severe bodily injury, severe emotional distress, humiliation, embarrassment, mental distress, and loss of personal dignity.

Lt. Tibbs filed a false incident report, which caused Mr. Hamrick to be placed in a segregation unit. He was released from segregation after an officer reviewed the video footage of the incident. Mr. Hamrick was also threatened that he would be harmed if he filed paperwork or grievances related to the incident. Lt. Tibbs "has been involved in using excessive force, most commonly through the use of O.C. spray, against at least dozens of inmates while he was a correctional officer at NCRJ." (Compl. at ¶ 9.)

The Complaint contains the following counts: Count 1 – Outrageous Conduct; Count II – Violation of 42 U.S.C. § 1983; and Count 3 – Vicarious Liability.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff

to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendant WVDCR argues that the sole claim against it, for vicarious liability, is not a stand-alone claim and is not supported by either of the claims against Lt. Tibbs. WVDCR contends, and the Plaintiff concedes, that vicarious liability is not available for claims pursuant to 42 U.S.C. §1983. The Defendant contends that it cannot be vicariously liable for the tort of outrage claim asserted against Lt. Tibbs because it involves intentional conduct outside the scope of employment. In addition, WVDCR argues that it is entitled to qualified immunity under West Virginia law because Lt. Tibbs' alleged actions were outside the scope of his employment.

The Plaintiff contends that WVDCR is vicariously liable for Lt. Tibbs' state tort alleged in Count One. He argues that he has sufficiently alleged facts that would support a finding that the conduct was within the scope of employment. He relies on a decision by the West Virginia Supreme Court of Appeals, *Crawford v. McDonald*, 21-0732 (W. Va. Mar. 31, 2023), which involved the use of OC spray against an inmate. He also points to *Thompson v. Virginia*, wherein the Fourth Circuit recognized that discharging a taser on a non-resisting inmate is a violation of the right to be free from unnecessary and wanton infliction of pain. 878 F.3d 89, 105 (4th Cir.

2017) (citing *Martinez v. Stanford*, 323 F.3d 1178, 1180 (9th Cir. 2003)).   He asserts that he has properly pled that Lt. Tibbs' conduct was within the scope of his authority and for the benefit of WVDCR as his employer, and whether that conduct was within the scope of employment should be left to a jury.   In addition, he argues that WVDCR is not entitled to qualified immunity because the conduct was within the scope of employment, but clearly unlawful based on precedent regarding unnecessary use of tasers and OC spray.

The West Virginia Supreme Court of Appeals has outlined the test for state agency immunity from vicarious liability for the acts or omissions of its agents and employees as follows:

> If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee.

Syl. Pt. 12, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014).   The court explained that acts "manifestly outside of the scope of [an employee's] authority or employment" are "notable for being driven by personal motives which in no way benefit the State or the public, nor is it reasonably incident to the official or agent's duties."   *Id.* at 765.   However, "situations wherein State actors violate clearly established rights while acting within the scope of their authority and/or employment, are reasonably borne by the State."   *Id.*   The West

Virginia Supreme Court has adopted the Restatement factors for determining whether conduct is within the scope of employment: "if the conduct is (1) of the kind he is employed to perform; (2) occurs within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master, and (4) if force is used, the use of force is not unexpectable by the master." *W. Virginia Div. of Corr. & Rehab. v. Robbins*, 889 S.E.2d 88, 103 (W. Va. 2023) (emphasis omitted). "The 'purpose' of the act is of critical importance." *Id.* "Whether an act falls within the scope of employment generally presents a question of fact," unless "the facts are undisputed and no conflicting inferences are possible." *Crawford v. McDonald*, No. 21-0732, 2023 WL 2729675, at *7 (W. Va. Mar. 31, 2023). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (quoting *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d at 769).

The Defendant emphasizes this Court's prior opinion in a similar case finding that "the retaliatory use of OC spray could in no way serve the purposes of the WVDOC," and was therefore outside the scope of employment. *Marcum v. Bailey*, No. 2:20-CV-00628, 2020 WL 7646977, at *5 (S.D.W. Va. Dec. 23, 2020) (Berger, J.). The Defendant argues Lt. Tibbs' intentional assault of Mr. Hamrick should result in the same finding. The Plaintiff emphasizes the West Virginia Supreme Court's reasoning in *Crawford*, finding that "a jury could reasonably find that the correctional officers' conduct in question was within the scope of their employment," where the Plaintiff alleged unjustified use of OC spray, failure to decontaminate, and extended use of restraints. *Crawford*, 2023 WL 2729675, at *7.

Mr. Hamrick has alleged that Lt. Tibbs pulled out his taser and shot him in the chest. He alleged that he was never given any warning and that he never refused any orders. The Plaintiff

6

states that he was not a threat to himself, the Defendant, Tibbs or anyone else when he was shot with the taser and suffered serious physical injury as a result. (Compl. at ¶ 7) Further, the Plaintiff alleged that Defendant Tibbs "attempted to cover up his wrongful conduct by filing a false incident report" and that the Plaintiff "was…threatened that if he attempted to file any paperwork or grievances related to this incident that the correctional officers would harm him." (*Id*. At 8) No facts are alleged to indicate any type of security, disciplinary or other issue resulting in Lt. Tibbs tasing Mr. Hamrick for the benefit of WVDCR. Similarly, no facts are alleged from which the Court could draw a reasonable inference of the same. The factual allegations indicate that Lt. Tibbs tased Mr. Hamrick without legal justification.

The West Virginia Supreme Court in *Crawford* found that a reasonable jury could find excessive force and could find that the subject officer was acting within the scope of his employment based on the disputed evidence that the plaintiff was on drugs, refused directives from officers and could have been viewed as a security risk. Unlike the posture of the *Crawford* case, on appeal, this Court is analyzing a motion to dismiss and must, therefore, assume the factual allegations in the Complaint to be true.

Assuming the allegations to be true, no reasonable inference can be drawn that Defendant Tibbs' intentional wrongful conduct was done in the interest of or for the benefit of his employer. The Court makes this finding noting that tasing may be included in Lt. Tibbs duties under appropriate circumstances and that the alleged wrongful conduct occurred at the time and place of employment. Based on the allegations, however, Defendant Tibbs engaged in intentional conduct outside the scope of his employment. Therefore, the Defendant's motion to dismiss the WVDCR must be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 3) be **GRANTED** and that Defendant West Virginia Division of Corrections and Rehabilitation be **DISMISSED** from this case.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   March 11, 2025

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA